David W. Affeld, State Bar No. 123922
Damion Robinson, State Bar No. 262573
David Markevitch, State Bar No. 256163
Affeld Grivakes LLP
2049 Century Park East, Suite 2460
Los Angeles, California 90067
Tel.    (310) 979-8700
Fax     (310) 979-8701
dm@agzlaw.com

Attorneys for Plaintiff
Dexter D. Harris

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO/OAKLAND DIVISION

| | |
|---|---|
| DEXTER D. HARRIS, individually,<br><br>Plaintiff,<br><br>v.<br><br>PACIFIC GAS AND ELECTRIC COMPANY, a California corporation; WORLEYPARSONS LIMITED, a foreign company, doing business as Worley; ENERGY RESOURCING GROUP, a foreign company, and Does 1 – 20,<br><br>Defendants. | Case No. 4:21-cv-04096<br><br>**FIRST AMENDED COMPLAINT**<br><br>**REQUEST FOR JURY TRIAL** |

Plaintiff, Dexter D. Harris ("Plaintiff"), complaints of Defendants Pacific Gas and Electric Company, a California corporation; WorleyParsons Limited, a foreign company, doing business as Worley; Energy Resourcing Americas, Inc., a foreign corporation, initially sued as Energy Resourcing Group, a foreign company, and Does 1 – 20 (collectively, "Defendants") as follows:

# I.     INTRODUCTION

1.     This is an employment discrimination case, brought pursuant to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000e, *et seq.*, as amended ("Title VII") and Fair Employment & Housing Act ("FEHA"), California Gov. Code § 12900, *et seq.*

2.     Plaintiff is a black male.  Plaintiff alleges that Defendants have discriminated and retaliated against him based on his race and have wrongfully terminated his employment.

3.     Defendants hired Plaintiff to perform high voltage energy transmission inspections and other related work in California.

4.     Plaintiff was the only black male in his group.

5.     Defendant is a highly skilled professional in his area of expertise.  He was one of the top inspectors while working for Defendants.

6.     Defendants, however, consistently and systematically discriminated against Plaintiff based on his race.

7.     Defendants purposely held up Plaintiff's salary payments.

8.     When Plaintiff complained, Defendants falsely accused Plaintiff of work performance-related failures and terminated his employment.  The stated bases for Plaintiff's termination were entirely fabricated.

# II.     JURISDICTION, VENUE, AND INTRADISTRICT ASSIGNMENT

9.     This Court has original jurisdiction of Plaintiff's Title VII claims as claims arising under federal law.

10.     This Court has supplemental jurisdiction of Plaintiff's FEHA claims pursuant to 42 U.S.C. §1367(a).

11.     Venue is proper in this District pursuant to 42 U.S.C. §2000-5(f)(3). Defendants are subject to personal jurisdiction in this District in that they maintain facilities and business operations in this District, employed Plaintiff in this District, and committed some of

FIRST AMENDED COMPLAINT

the discriminatory acts alleged herein in this District.

12.     Venue is proper in the San Francisco/Oakland Division of this Court pursuant to Local Rule 3-2(c) - (d) because a substantial part of the events which give rise to the claims asserted in this Complaint occurred in Contra Costa County. In particular, Defendants employed Plaintiff at a facility in San Ramon, Contra Costa County, California, and there committed acts of discrimination in employment as alleged in this complaint.

## III.     PARTIES

13.     Plaintiff is a former employee of Defendants.  Plaintiff is a black male.  He is a resident of the State of Louisiana.

14.     Pacific Gas and Electric Company is a California corporation with headquarters and facilities within this District.

15.     WorleyParsons Limited is a foreign company that is doing business in California, including in this District, as Worley.

16.     Energy Resourcing Americas, Inc., initially sued as Energy Resourcing Group, is a foreign company doing business in California including in this District.

17.     WorleyParsons Limited and Energy Resourcing Americas, Inc./Energy Resourcing Group hired Plaintiff to perform work for Pacific Gas and Electric Company in California.

18.     Defendants DOES 1 through 20, inclusive, are sued herein under fictitious names. Their true names and capacities are unknown to Plaintiff. When their true names and capacities are ascertained, Plaintiff will amend this complaint by inserting their true names and capacities. On information and belief, Plaintiff alleges that each of the fictitiously named Defendants is legally responsible for the acts and omissions alleged in this complaint. Each reference in this complaint to "Defendant" or "Defendants" refers to all named Defendants and those sued under fictitious names.

FIRST AMENDED COMPLAINT

## IV.   EXHAUSTION OF ADMINISTRATIVE REMEDIES

19.   Plaintiff filed charges of discrimination against Defendants with the EEOC.  The EEOC thereafter issued right to sue notices attached here as Exhibits 1 – 3.

20.   Plaintiff also filed a Complaint against Defendants with the California Department of Fair Employment and Housing ("DFEH") and request a right to sue notice thereon. DFEH issued a right to sue notice attached here as Exhibit 4.

## V.   FACTS

21.   On March 26, 2020, Defendants hired Plaintiff as a Project Manager to perform high voltage energy transmission inspections and other related work in California.

22.   Immediately after hiring him, Defendants exposed Plaintiff to racial discrimination and harassment. His co-workers referred to him as "Johnny on the spot here smart nigga." It was a daily occurrence, and Plaintiff often heard them say it. Defendants' supervisors and management personnel knew of this practice but did nothing to stop it.

23.   Defendants' personnel including Plaintiff's supervisors/managers singled Plaintiff out for how he looked, dressed, conducted himself and for the new truck that he drove. They were, apparently, upset with the fact that a Black man amongst them was well educated, carried himself with confidence, was well dressed, and drove a nice truck. It did not sit well with their racist views. Indeed, they called Plaintiff "an enigma" to his face.

24.   From the very beginning of his employment, Defendants failed to pay earned and due wages and per diem benefits. When Plaintiff complained of the situation to management, Defendants retaliated falsely accusing Plaintiff of work-related mistakes, and terminated his employment on August 26, 2020.

25.   As a result of Defendants' conduct stated herein, Plaintiff suffered economic damages.

## FIRST CLAIM FOR RELIEF – VIOLATION OF TITLE VII

26.   Plaintiff re-alleges and incorporates by reference herein the allegations of

- 4 -

paragraphs 1 through 25, inclusive, as set forth above.

27.     Defendants' race discrimination against Plaintiff is in violation of the rights secured to him by Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000e *et seq.*, as amended by the Civil Rights Act of 1991.

28.     Defendants also retaliated against Plaintiff for reporting and challenging their discriminatory conduct, resulting in non-payment of his wages, in violation of 42 U.S.C. § 2000e-3.

29.     By the conduct described above, Defendants intentionally violated the rights of Plaintiff under Title VII.

30.     Defendants' conduct also has had an adverse impact against Plaintiff, and is neither job-related nor consistent with business necessity, and therefore violates the rights of Plaintiff under Title VII.

31.     As a result of the violation of the Title VII rights of Plaintiff, Plaintiff is entitled to monetary, equitable and injunctive relief, including "rightful place" and "make whole" remedies and equitable monetary relief, to remedy and compensate for the effects of Defendants' unlawful actions.

32.     As a result of the Defendants' intentional violation of the Title VII rights of Plaintiff, Plaintiff has suffered anguish, humiliation, distress, inconvenience and loss of enjoyment of life, thereby entitling him to compensatory damages.

33.     In their discriminatory actions as alleged above, Defendants have acted with malice or reckless indifference to the rights of Plaintiff, thereby entitling him to an award of punitive damages.

34.     To remedy the violation of the rights of Plaintiff secured by Title VII, Plaintiff requests that the Court award him the relief prayed for below.

**SECOND CLAIM FOR RELIEF - DISCRIMINATION IN VIOLATION OF FAIR EMPLOYMENT & HOUSING ACT, GOV. CODE § 12940, *ET SEQ.***

35.     Plaintiff re-alleges and incorporates by reference herein the allegations of

1  paragraphs 1 through 25, inclusive, as set forth above.

2          36.    Plaintiff was at all times herein an "employee" within the meaning of

3  California Government Code §12926(c) and California Code §12940(a) and (c).

4          37.    Defendants, and each of them, were at all relevant times herein

5  "employer[s]" within the meaning of California Government Code §12926(d) and California

6  Government Code §12940(a) and (c) and, as such, were barred from discriminating in

7  employment decisions on the basis of race, color, or ancestry, as set forth in California

8  Government Code §12940.

9          38.    Defendants, and each of them, repeatedly discriminated against Plaintiff

10  based on the said protected characteristics, in violation of California Government Code §12940

11  (a) and (j)(1), Article I of the California Constitution and related statutes by engaging in the

12  course of conduct more fully set forth above.

13          39.    The discriminatory practices as alleged above toward Plaintiff were

14  committed, approved and/or ratified by the Defendants' agents and supervisors, and it is due to

15  their failure to take action following them learning of the said discrimination that Plaintiff had

16  been the victim of discrimination and harassment.

17          40.    Defendants, and each of them, failed to take all reasonable steps to prevent

18  discrimination against Plaintiff and the harassment of Plaintiff from occurring, in violation of

19  California Government Code §12940(k), by engaging in the course of conduct as set forth above.

20          41.    Specifically, Defendants, and each of them, failed to take any meaningful

21  preventative action against those employees that were harassing and discriminating against

22  Plaintiff and enabling others to harass and discriminate against Plaintiff.  If the Defendants have

23  any written policies addressing the issues of discrimination and harassment, the policies were not

24  enforced and were consistently disregarded by Defendants.

25          42.    Defendants, and each of them, failed to take all reasonable steps to correct

26  and remedy the harassment of Plaintiff, in violation of California Government Code §12940(j),

27  by engaging in the course of conduct set forth above.

28          43.    During the course of this misconduct, Plaintiff asked Defendants, though

FIRST AMENDED COMPLAINT

their agents and employees, to intervene on his behalf, but the Defendants failed to take immediate and appropriate corrective action to remedy the harassment of Plaintiff.

44.     As a result of the said unlawful conduct of Defendants, and each of them, against Plaintiff, Plaintiff has suffered (a) humiliation, serious mental anguish, emotional and physical distress; and (b) loss of past and future earnings and employment benefits and opportunities; all on the account of which Plaintiff is entitled to compensatory damages in an amount to be proven at trial, but in excess of $1,000,000.00.

**THIRD CLAIM FOR RELIEF - HARASSMENT IN VIOLATION OF**

**FAIR EMPLOYMENT & HOUSING ACT, GOV. CODE § 12940, ET SEQ.**

45.     Plaintiff re-alleges and incorporates by reference herein the allegations of paragraphs 1 through 25, inclusive, as set forth above.

46.     Plaintiff was at all times herein an "employee" within the meaning of California Government Code §12926(c) and California Code §12940(a) and (c).

47.     Defendants, and each of them, engaged in conduct, as described in detail above, which constituted harassment in violation of Fair Employment & Housing Act, Gov. Code § 12940, *et seq*. in that Plaintiff was subjected to unwanted harassing conduct because of Plaintiff' race, color, an ancestry.

48.     On information and belief, Defendants have an engrained culture of racism among its managers and employees working in the field.  Plaintiff experienced the effects of that culture first hand.

49.     Defendants' conduct had a significant detrimental effect on Plaintiff' physical, mental and emotional health, and substantially altered his working conditions.

50.     Defendants knew or should have known of the harassment and failed to take appropriate corrective action.

51.     This conduct was sufficiently severe and pervasive to alter the conditions of Plaintiff' employment.

52.     Plaintiff both reasonably and actually considered the work environment to

be hostile and abusive.

53.     As a proximate result of the actions of Defendants, and each of them, against Plaintiff, as alleged above, Plaintiff has been harmed in that he has suffered the loss of wages, benefits, and additional amounts of money he would have received if he had not been subject to said harassment.  As a further proximate result of the Defendants' actions against Plaintiff, as alleged above, Plaintiff has been harmed in that he has suffered humiliation, mental anguish, and emotional and physical distress. Plaintiff is entitled to compensatory damages in an amount to be proven at trial, but in excess of $1,000,000.00.

## FOURTH CLAIM FOR RELIEF - RETALIATION IN VIOLATION OF
## FAIR EMPLOYMENT & HOUSING ACT, GOV. CODE § 12940, ET SEQ.

54.     Plaintiff re-alleges and incorporates by reference herein the allegations of paragraphs 1 through 25, inclusive, as set forth above.

55.     In violation of California Government Code §12940(h), Defendants, and each of them, retaliated against Plaintiff by taking increasingly severe adverse employment actions against Plaintiff by unlawfully discriminating and retaliating against him after he complained about and opposed unlawful discrimination and harassment, as more fully set forth above.

56.     As a direct and proximate result of the retaliatory actions by Defendants, including the County, and each of them, against Plaintiff, Plaintiff has suffered (a) humiliation, serious mental anguish, emotional and physical distress; and (b) loss of past and future earnings and employment benefits and opportunities; all on the account of which Plaintiff is entitled to compensatory damages in an amount to be proven at trial, but in excess of $1,000,000.00.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court grant relief on his First Claim for Relief as specified below:

1.     For declaratory relief finding Defendants' actions in violation of Title VII.

- 8 -

FIRST AMENDED COMPLAINT

2.      For equitable monetary relief, compensatory and punitive damages within the limits of 42 U.S.C. §1981a(a)(1) to Plaintiff on the claims asserted under Title VII in the First Cause of Action, in an amount to be proved at trial.

3.      For an award of Plaintiff's costs, expenses and attorneys' fees, payable by Defendants by determining that Plaintiff is a prevailing party on the First Cause of Action, and thereupon awarding Plaintiff his reasonable costs, expenses, and attorneys' fees incurred in bringing this action, pursuant to 42 U.S.C. §1988 and 42 U.S.C. §2000e-5(k).

4.      For pre- and post- judgment interest.

5.      For such other and further relief as this Court deems equitable and just.

WHEREFORE, Plaintiff further prays that the Court grant relief on his Second through Fourth Claims for Relief as specified below:

6.      For special and general damages according to proof.

7.      For penalties pursuant to California Labor Code.

8.      For a permanent injunction prohibiting Defendants from discriminating against employees based on race, color, or ancestry in violation of the FEHA.

9.      For costs of suit incurred herein.

10.     For attorney fees and expert costs on causes of action where the same are available by law, including but not limited to causes of action brought pursuant to the FEHA.

11.     For prejudgment and post-judgment interest as available by law.

12.     For such other and further relief as this Court may deem just and proper.

Dated:  August 30, 2021                     Respectfully submitted,


By: /s/ _____
        David W. Affeld
        Damion R.R. Robinson
        Affeld Grivakes LLP

        Attorneys for Plaintiff

- 9 -

FIRST AMENDED COMPLAINT

**DEMAND FOR JURY TRIAL**

Plaintiff demands trial by jury on all claims stated in this complaint on which he is entitled to a jury trial.

Dated:  August 30, 2021

Respectfully submitted,

By: /s/
David W. Affeld
Damion R.R. Robinson
Affeld Grivakes LLP

Attorneys for Plaintiff

FIRST AMENDED COMPLAINT



**EXHIBIT 1**

EEOC Form 161 (11/2020)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### DISMISSAL AND NOTICE OF RIGHTS

To: **Dexter D. Harris**
**6325 Bentley Drive**
**Baker, LA 70714**

From: **Oakland Local Office**
**1301 Clay Street**
**Ste. 680-North**
**Oakland, CA 94612**

☐ *On behalf of person(s) aggrieved whose identity is*
*CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **555-2021-00559** | **Bryan G. Hoss,**<br>**Intake Supervisor** | **(510) 956-0015** |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☒ The EEOC issues the following determination: The EEOC will not proceed further with its investigation, and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

☐ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other *(briefly state)*

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

03-04-2021

**Bryan Hoss**

Digitally signed by Bryan Hoss
DN: cn=Bryan Hoss, o=U.S. EEOC,
ou=Enforcement Unit,
email=bryan.hoss@eeoc.gov, c=US
Date: 2021.03.04 12:06:14 -08'00'

Enclosures(s)

**For/ Steven T. Hunt,**
**Director**

*(Date Issued)*

cc: **Stacy A. Campos**
**Director of Law Dept.**
**PACIFIC GAS AND ELECTRIC COMPANY**
**P.O. Box 7442**
**San Francisco, CA 94105**

Enclosure with EEOC
Form 161 (11/2020)

# INFORMATION RELATED TO FILING SUIT
# UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court <u>under Federal law</u>.
If you also plan to sue claiming violations of State law, please be aware that time limits and other
provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS** -- **Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days** of the date you *receive* this Notice.  Therefore, you should **keep a record of this date**.  Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost.  If you intend to consult an attorney, you should do so promptly.  Give your attorney a copy of this Notice, and its envelope or record of receipt, and tell him or her the date you received it.  Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was** *issued* to you (as indicated where the Notice is signed) or the date of the postmark or record of receipt, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction.  (Usually, the appropriate State court is the general civil trial court.)  Whether you file in Federal or State court is a matter for you to decide after talking to your attorney.  Filing this Notice is not enough.  You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief.  Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge.  Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office.  If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS** -- **Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than** **2 years (3 years)** **before you file suit** may not be collectible.  For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit *before 7/1/10 – not* 12/1/10 -- in order to recover unpaid wages due for July 2008.  This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above.  Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice <u>and</u> within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION** -- **Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer.  Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney).  Requests should be made well before the end of the 90-day period mentioned above, because such requests do <u>not</u> relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE** -- **All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case.  If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice).  While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case.  Therefore, if you file suit and want to review the charge file, **please make your review request** <u>within 6 months</u> **of this Notice**.  (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*

STATE OF CALIFORNIA | State and Consumer Services Agency

GAVIN NEWSOM, GOVERNOR

# DEPARTMENT OF FAIR EMPLOYMENT & HOUSING

2218 Kausen Drive, Suite 100 | Elk Grove, CA | 95758
800-884-1684 | Videophone for the DEAF 916-226-5285
www.dfeh.ca.gov | e-mail: contact.center@dfeh.ca.gov

DIRECTOR KEVIN KISH

| | |
|---|---|
| EEOC Number: | 555-2021-00559C |
| Case Name: | Dexter D. Harris vs. PACIFIC GAS AND ELECTRIC COMPANY |
| Filing Date: | February 20, 2021 |

### NOTICE TO COMPLAINANT AND RESPONDENT

This is to advise you that the above-referenced complaint is being dual filed with the California Department of Fair Employment and Housing (DFEH), a state agency, and the United States Equal Employment Opportunity Commission (EEOC), a federal agency. The complaint will be filed in accordance with California Government Code section 12960. The notice constitutes service pursuant to Government Code section 12962.

The EEOC is responsible for the processing of this complaint and the DFEH will not be conducting an investigation into this matter. Please contact EEOC directly for any discussion of the complaint or the investigation.

### NOTICE TO COMPLAINANT OF RIGHT TO SUE

This letter is also your state Right to Sue notice. This state Right to Sue Notice allows you to file a private lawsuit. According to Government Code section 12965, subdivision (b), you may bring a civil action under the provisions of the Fair Employment and Housing Act against the person, employer, labor organization or employment agency named in the above- referenced complaint. The lawsuit may be filed in a State of California Superior Court.

Government Code section 12965, subdivision (b), provides that such a civil action must be brought within one year from the date of this notice or, pursuant to Government Code section 12965, subdivision (d)(2), 90 days from receipt of the federal right-to-sue letter from the EEOC, whichever is later. You should consult an attorney to determine with accuracy the date by which a civil action must be filed. This right to file a civil action may be waived in the event a settlement agreement is signed.

Be advised, the DFEH does not retain case records beyond three years after a complaint is filed.

(Revised 11/2016)

**EXHIBIT 2**

EEOC Form 161 (11/2020)

U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

| To: | Dexter D. Harris<br>6325 Bentley Drive<br>Baker, LA 70714 | From: | Los Angeles District Office<br>255 E. Temple St. 4th Floor<br>Los Angeles, CA 90012 |
|---|---|---|---|

| ☐ | On behalf of person(s) aggrieved whose identity is<br>CONFIDENTIAL (29 CFR §1601.7(a)) | | |

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 480-2021-00954 | Richie Quinteros,<br>Investigator | (213) 785-3046 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

| [X] | The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC. |
|---|---|
| ☐ | Your allegations did not involve a disability as defined by the Americans With Disabilities Act. |
| ☐ | The Respondent employs less than the required number of employees or is not otherwise covered by the statutes. |
| ☐ | Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge |
| ☐ | The EEOC issues the following determination: The EEOC will not proceed further with its investigation, and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge. |
| ☐ | The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge. |
| ☐ | Other *(briefly state)* |

## - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

Garrett D. Hoover    Digitally signed by Garrett D. Hoover<br>DN: cn=Garrett D. Hoover, ou=EEOC, ou=SDLO -<br>CRITU, email=garrett.hoover@eeoc.gov, c=US<br>Date: 2021.03.03 08:20:53 -08'00'    For

March 3, 2021

Enclosures(s)

Rosa M. Viramontes,<br>**District Director**

*(Date Issued)*

cc:    **Renee Brock**
**General Counsel US Labor & Employment**
**WORLEY**
**1 MERIDIAN BLVD**
**STE 2C02**
**Wyomissing, PA 19610**

Enclosure with EEOC
Form 161 (11/2020)

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court <u>under Federal law</u>.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS** -- **Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days** of the date you *receive* this Notice. Therefore, you should **keep a record of this date.** Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope or record of receipt, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was** *issued* to you (as indicated where the Notice is signed) or the date of the postmark or record of receipt, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS** -- **Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years) before you file suit** may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit before 7/1/10 – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice *and* within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION** -- **Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do <u>not</u> relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE** -- **All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request <u>within 6 months</u> of this Notice**. (Before filing suit, any request should be made within the next 90 days.)

***IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.***

**EXHIBIT 3**

EEOC Form 161 (11/2020)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

To: **Dexter D. Harris**
**6325 Bentley Drive**
**Baker, LA 70714**

From: **Oakland Local Office**
**1301 Clay Street**
**Ste. 680-North**
**Oakland, CA 94612**

☐ *On behalf of person(s) aggrieved whose identity is*
*CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **555-2021-00561** | **Bryan G. Hoss,**<br>**Intake Supervisor** | **(510) 956-0015** |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☒ The EEOC issues the following determination: The EEOC will not proceed further with its investigation, and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

☐ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other *(briefly state)*

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

**Bryan Hoss** Digitally signed by Bryan Hoss
DN: cn=Bryan Hoss, o=U.S. EEOC, ou=Enforcement
Unit, email=bryan.hoss@eeoc.gov, c=US
Date: 2021.03.04 11:46:03 -08'00'

03-04-2021

Enclosures(s)

**For / Steven T. Hunt,**
**Director**

*(Date Issued)*

cc:
**Ryan Hill**
**Managing Director**
**ENERGY RESOURCING GROUP**
**575 N DAIRY ASHFORD RD STE 436**
**Houston, TX 77079**



STATE OF CALIFORNIA | State and Consumer Services Agency

GAVIN NEWSOM, GOVERNOR

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**

DIRECTOR KEVIN KISH

2218 Kausen Drive, Suite 100 | Elk Grove, CA | 95758
800-884-1684 | Videophone for the DEAF 916-226-5285
www.dfeh.ca.gov | e-mail: contact.center@dfeh.ca.gov

EEOC Number:    555-2021-00561C

Case Name:    Dexter D. Harris vs. ENERGY RESOURCING GROUP

Filing Date:    Februayr 20, 2021

## NOTICE TO COMPLAINANT AND RESPONDENT

This is to advise you that the above-referenced complaint is being dual filed with the California Department of Fair Employment and Housing (DFEH), a state agency, and the United States Equal Employment Opportunity Commission (EEOC), a federal agency. The complaint will be filed in accordance with California Government Code section 12960. The notice constitutes service pursuant to Government Code section 12962.

The EEOC is responsible for the processing of this complaint and the DFEH will not be conducting an investigation into this matter. Please contact EEOC directly for any discussion of the complaint or the investigation.

## NOTICE TO COMPLAINANT OF RIGHT TO SUE

This letter is also your state Right to Sue notice. <u>This state Right to Sue Notice allows you to file a private lawsuit</u>. According to Government Code section 12965, subdivision (b), you may bring a civil action under the provisions of the Fair Employment and Housing Act against the person, employer, labor organization or employment agency named in the above- referenced complaint. The lawsuit may be filed in a State of California Superior Court.

Government Code section 12965, subdivision (b), provides that such a civil action must be brought within one year from the date of this notice or, pursuant to Government Code section 12965, subdivision (d)(2), 90 days from receipt of the <u>federal</u> right-to-sue letter from the EEOC, whichever is later. You should consult an attorney to determine with accuracy the date
by which a civil action must be filed. This right to file a civil action may be waived in the event a settlement agreement is signed.

Be advised, the DFEH does not retain case records beyond three years after a complaint is filed.

(Revised 11/2016)



**EXHIBIT 4**



STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency                                 GAVIN NEWSOM, GOVERNOR

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**                                          KEVIN KISH, DIRECTOR

2218 Kausen Drive, Suite 100 I Elk Grove I CA I 95758
(800) 884-1684 (Voice) I (800) 700-2320 (TTY) | California's Relay Service at 711
http://www.dfeh.ca.gov I Email: contact.center@dfeh.ca.gov

August 12, 2021

RE:     **Notice of Filing of Discrimination Complaint**
        DFEH Matter Number: 202108-14450212
        Right to Sue: Harris / Pacific Gas and Electric Company et al.

To All Respondent(s):

Enclosed is a copy of a complaint of discrimination that has been filed with the
Department of Fair Employment and Housing (DFEH) in accordance with Government
Code section 12960. This constitutes service of the complaint pursuant to Government
Code section 12962. The complainant has requested an authorization to file a lawsuit. A
copy of the Notice of Case Closure and Right to Sue is enclosed for your records.

This matter may qualify for DFEH's Small Employer Family Leave Mediation pilot
program. Under this program, established under Government Code section 12945.21,
a small employer with 5 -19 employees, charged with violation of the California Family
Rights Act, Government Code section 12945.2, has the right to participate in DFEH's
free voluntary mediation service. Under this program both the employee requesting an
immediate right to sue and the employer charged with the violation may request that all
parties participate in DFEH's free voluntary mediation service. A request for mediation
must be made within 30 days of receipt of the Notice of Case Closure and Right to Sue.
If mediation is requested, the employee is prohibited from filing a civil action until
mediation is complete. The employee's statute of limitations to file a civil action,
including for all related claims not arising under section 12945.2, is tolled from DFEH's
receipt of a mediation request under section 12945.21 until mediation is complete.  To
request DFEH Small Employer Family Leave Mediation, email
DRDOnlinerequests@dfeh.ca.gov and include the DFEH matter number indicated on
the Right to Sue notice.

Please refer to the attached complaint for a list of all respondent(s) and their contact
information.

No response to DFEH is requested or required.

Sincerely,


Department of Fair Employment and Housing



STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency                    GAVIN NEWSOM, GOVERNOR

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**                    KEVIN KISH, DIRECTOR

2218 Kausen Drive, Suite 100 I Elk Grove I CA I 95758
(800) 884-1684 (Voice) I (800) 700-2320 (TTY) | California's Relay Service at 711
http://www.dfeh.ca.gov | Email: contact.center@dfeh.ca.gov

August 12, 2021

Dexter Harris
6325 Bentley Drive
Baker, Louisiana 70714

RE:     **Notice of Case Closure and Right to Sue**
         DFEH Matter Number: 202108-14450212
         Right to Sue: Harris / Pacific Gas and Electric Company et al.

Dear Dexter Harris:

This letter informs you that the above-referenced complaint filed with the Department of Fair Employment and Housing (DFEH) has been closed effective August 12, 2021 because an immediate Right to Sue notice was requested.

This letter is also your Right to Sue notice. According to Government Code section 12965, subdivision (b), a civil action may be brought under the provisions of the Fair Employment and Housing Act against the person, employer, labor organization or employment agency named in the above-referenced complaint. The civil action must be filed within one year from the date of this letter.

This matter may qualify for DFEH's Small Employer Family Leave Mediation pilot program. Under this program, established under Government Code section 12945.21, a small employer with 5 -19 employees, charged with violation of the California Family Rights Act, Government Code section 12945.2, has the right to participate in DFEH's free voluntary mediation service. Under this program both the employee requesting an immediate right to sue and the employer charged with the violation may request that all parties participate in DFEH's free voluntary mediation service. A request for mediation must be submitted to the DFEH within 30 days of receipt of the Notice of Case Closure and Right to Sue. If mediation is requested, the employee is prohibited from filing a civil action until mediation is complete. The employee's statute of limitations to file a civil action, including for all related claims not arising under section 12945.2, is tolled from DFEH's receipt of a mediation request under section 12945.21 until mediation is complete.  To request DFEH Small Employer Family Leave Mediation, email DRDOnlinerequests@dfeh.ca.gov and include the DFEH matter number indicated on the Right to Sue notice.

To obtain a federal Right to Sue notice, you must contact the U.S. Equal Employment Opportunity Commission (EEOC) to file a complaint within 30 days of receipt of this DFEH Notice of Case Closure or within 300 days of the alleged discriminatory act, whichever is earlier.

Sincerely,



STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency                                         GAVIN NEWSOM, GOVERNOR

# DEPARTMENT OF FAIR EMPLOYMENT & HOUSING

KEVIN KISH, DIRECTOR

2218 Kausen Drive, Suite 100 I Elk Grove I CA I 95758
(800) 884-1684 (Voice) I (800) 700-2320 (TTY) | California's Relay Service at 711
http://www.dfeh.ca.gov I Email: contact.center@dfeh.ca.gov

Department of Fair Employment and Housing

**COMPLAINT OF EMPLOYMENT DISCRIMINATION
BEFORE THE STATE OF CALIFORNIA
DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING
Under the California Fair Employment and Housing Act
(Gov. Code, § 12900 et seq.)**

**In the Matter of the Complaint of**

Dexter Harris

DFEH No. 202108-14450212

Complainant,

vs.

Pacific Gas and Electric Company
P.O. Box 7442
San Francisco, California 94105

Worley Parsons Limited
1 Meridian Blvd, STE 2C02
Wyomissing, Pennsylvania 19610

Energy Resourcing Group
575 N Dairy Ashford Rd., STE 436
Houston, Texas 77079

Energy Resourcing Americas, Inc.
575 N Dairy Ashford Rd., STE 100
Houston, Texas 77079

Respondents

_____

**1.** Respondent **Pacific Gas and Electric Company**  is an **employer Pacific Gas and Electric Company** subject to suit under the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.).

**2**.Complainant is naming **Worley Parsons Llimited** business as Co-Respondent(s).
Complainant is naming **Energy Resourcing Group** business as Co-Respondent(s).
Complainant is naming **Energy Resourcing Americas, Inc.** business as Co-Respondent(s).

**3**. Complainant **Dexter Harris**, resides in the City of **Baker,** State of **Louisiana.**

**4.** Complainant alleges that on or about **August 12, 2021**, respondent took the following adverse actions:

-1-

*Complaint – DFEH No. 202108-14450212*

Date Filed: August 12, 2021

**Complainant was harassed** because of complainant's race, ancestry, national origin (includes language restrictions), color, other.

**Complainant was discriminated against** because of complainant's race, ancestry, national origin (includes language restrictions), color, other and as a result of the discrimination was terminated, denied hire or promotion, reprimanded, demoted, asked impermissible non-job-related questions, denied any employment benefit or privilege, other, denied work opportunities or assignments.

**Complainant experienced retaliation** because complainant reported or resisted any form of discrimination or harassment and as a result was terminated, denied hire or promotion, reprimanded, demoted, asked impermissible non-job-related questions, denied any employment benefit or privilege, other, denied work opportunities or assignments.

**Additional Complaint Details:** Summary:

This is an employment discrimination case. Complainant Dexter Harris ("Harris") is a Black male.  Harris alleges that Respondents have discriminated and retaliated against him on the basis of his race and have wrongfully terminated his employment.
Respondents hired Harris to perform high voltage energy transmission inspections and other related work in California. Harris was the only Black male in his group.

Harris is a highly skilled professional in his area of expertise.  He was one of the top inspectors while working for Respondents. Respondents, however, consistently and systematically discriminated against Harris based on his race. Respondents purposely held up Harris's salary payments. When Harris complained, Respondents falsely accused Harris of work performance-related failures and terminated his employment.  The stated bases for Harris's termination were entirely fabricated.

Facts:*

On March 26, 2020, Energy Resourcing Americas, Inc., Energy Resourcing Group, WorleyParsons Limited, and Pacific Gas & Electric Company (collectively, "Respondents") hired Harris as a Project Manager to perform high voltage energy transmission inspections and other related work in California.

Immediately after hiring him, Respondents exposed Harris to racial discrimination and harassment. His co-workers referred to him as "Johnny on the spot here smart nigga." It was a daily occurrence, and Harris often heard them say it. Respondents' supervisors and management personnel knew of this practice but did nothing to stop it.

Respondents' personnel including Harris' supervisors/managers singled Harris out for how he looked, dressed, conducted himself and for the new truck that he drove. They were, apparently, upset with the fact that a Black man amongst them was well educated, carried himself with confidence, was well dressed, and drove a nice truck. It did not sit well with their racist views. Indeed, they called Harris "an enigma" to his face.

Date Filed: August 12, 2021

1

2   Harris' compensation terms were set forth in a written agreement ("Agreement"; Ex. 1). From the very beginning of his employment, Respondents failed to pay earned and due wages

3   and per diem benefits. When Harris complained of the situation to management, Respondents retaliated falsely accusing Harris of work-related mistakes, and terminated his

4   employment on August 26, 2020.

5   * Harris incorporates by reference Exhibits 2-4, which are prior submissions to EEOC and/or DFEH.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27                                                    -3-
                                    *Complaint – DFEH No. 202108-14450212*
28
    Date Filed: August 12, 2021

1

VERIFICATION

2

I, **David Markevitch**, am the **Attorney** in the above-entitled complaint.  I have read

3

the foregoing complaint and know the contents thereof.  The matters alleged are
based on information and belief, which I believe to be true.

4

On August 12, 2021, I declare under penalty of perjury under the laws of the State of

5

California that the foregoing is true and correct.

6

**San Jose, California**

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

-4-

*Complaint – DFEH No. 202108-14450212*

28

Date Filed: August 12, 2021



BANGKOK | BEIJING | BRISBANE | CALGARY | HOUSTON | LONDON | PERTH | SINGAPORE | ULSAN

**INDEPENDENT CONTRACTOR AGREEMENT**

THIS AGREEMENT made on "To be determined" by and between **ENERGY RESOURCING AMERICAS, INC.** and Dexter Harris of Baker, Louisiana with a contact phone number of 484-735-4356 (hereinafter referred to as CONTRACTOR).

WITNESSETH:

WHEREAS, ENERGY RESOURCING AMERICAS, INC. ("ENERGY RESOURCING") is engaged in contract technical services for its client companies and ENERGY RESOURCING AMERICAS, INC. is desirous of engaging qualified contractors on an independent basis to fulfill the needs of its Client companies (hereinafter referred to as "Client"); and

WHEREAS, CONTRACTOR represents that he/she can perform the services required by Client without assistance, instruction or supervision from ENERGY RESOURCING.

NOW THEREFORE, in consideration of the mutual covenants and agreements herein contained, the parties hereto, do hereby agree as follows:

1. ENERGY RESOURCING shall contract to the CONTRACTOR certain technical services contracts, or portions thereof, as determined by ENERGY RESOURCING provided however, that such is not an exclusive dealing provision.

2. CONTRACTOR shall perform the services in accordance with the terms of this Agreement. ENERGY RESOURCING will provide workers' compensation insurance coverage for the individual CONTRACTOR for the term that he/she is performing the services for the Client. For all other purposes, the CONTRACTOR shall be considered independent from ENERGY RESOURCING, except to the extent of injuries incurred on the job that are covered by the provided workers' compensation insurance.  Furthermore, CONTRACTOR shall provide the transportation and all other items necessary to perform the services unless provided by Client. CONTRACTOR agrees to protect, indemnify and hold ENERGY RESOURCING and Client harmless from and against any and all acts, claims, demands, liabilities, losses and expenses allegedly or actually suffered by any person or entity (including, but not limited to, injury to or death of person or damage to property) while proceeding to or from the site Client services.  Any work performed by the CONTRACTOR that would be construed as health and safety related activities shall be performed under the direction and control of Client and in accordance with the health and safety policies of the Client and/or the job site policies.

3.  CONTRACTOR shall not hold himself/herself out to the Client or to the public as an employee or partner of, or in joint ventures with ENERGY RESOURCING. CONTRACTOR shall not use ENERGY RESOURCING designation or insignia on any business cards, letterheads, documents, clothing, signs or other items.

4. The CONTRACTOR shall function within the Client's organization per the established administrative procedures of the Client's organization.  All matters concerning the technical aspects of the work will be addressed through and under the direction and control of the Client's designated Project Representative.  The CONTRACTOR will address all matters of personal nature through ENERGY RESOURCING.

5. The CONTRACTOR warrants and represents that he/she (and his/her Technical Representative(s), if applicable) is experienced and properly licensed, qualified and equipped to perform the work which is required by Client.  The CONTRACTOR also warrants that his/her services and the services of his/her technical representative(s), if any, will be performed, within the limits prescribed by the Client in accordance with the terms of this Agreement, under recognized industry standards and with the highest degree of thoroughness and competence of the contracted profession.



6. ENERGY RESOURCING and CONTRACTOR agree that the relationship contemplated and established by this Agreement is that of principal independent CONTRACTOR, and that this Agreement does not create an employer-employee relationship between ENERGY RESOURCING and CONTRACTOR or between ENERGY RESOURCING and CONTRACTOR'S technical representative(s).  CONTRACTOR specifically agrees that neither CONTRACTOR nor his/her technical representative(s) shall have any claim or rights maintained by ENERGY RESOURCING or for the payment of Social Security taxes or Unemployment Compensation or any other like benefits, including any health, welfare and or retirement benefits by ENERGY RESOURCING.

7. ENERGY RESOURCING shall exercise no direction or control, nor shall it have the right to exercise any direction or control over the details, means or methods by which CONTRACTOR performs any services for Client, it being understood that CONTRACTOR is qualified, competent, capable and willing to achieve the results contracted for with Client without ENERGY RESOURCING assistance, control, direction or supervision, and CONTRACTOR shall look solely to Client for all matters pertaining thereto.  Nothing herein requires the CONTRACTOR to report anything other than invoicing information directly to ENERGY RESOURCING as indicated below.

8. Compensation to the CONTRACTOR shall be based on the fee schedule attached hereto and hereby made a part of this Agreement.  Said compensation shall be paid by ENERGY RESOURCING directly to the CONTRACTOR bi-weekly, one week in arrears. ENERGY RESOURCING accepts no obligation or responsibility for making any payments directly to the CONTRACTOR'S technical representative(s) if applicable.  The CONTRACTOR shall submit a client approved timesheet to ENERGY RESOURCING on a <u>weekly</u> basis for services performed by CONTRACTOR during the preceding period.  ENERGY RESOURCING shall be responsible for submission of invoices to the Client for CONTRACTOR'S  services.

9. Drug/Alcohol Policy.  This Agreement is contingent upon the successful completion of a drug/alcohol screening.  <u>If CONTRACTOR's drug/alcohol screen indicates a confirmed positive result, the CONTRACTOR will not be considered for assignment</u>.  To the fullest extent allowed by law, ENERGY RESOURCING strictly prohibits contractors from using any illegal substance while employed by the ENERGY RESOURCING and also prohibits contractors from using alcohol at work and from being in a condition impaired by alcohol at any time when they are in the course and scope of their duties for the ENERGY RESOURCING.  At any time while ENERGY RESOURCING is employed by the ENERGY RESOURCING, either the ENERGY RESOURCING or its client may require CONTRACTOR to undergo random drug testing. A confirmed positive result will subject CONTRACTOR to discipline, including possible termination, in accordance with the Drug and Alcohol policy.  On any occasion when the CONTRACTOR is re-assigned to work for a different ENERGY RESOURCING client or to work at a different location for the same ENERGY RESOURCING client, either the ENERGY RESOURCING or the client may require the ENERGY RESOURCING to undergo a drug test.  If the drug testing described in this paragraph would violate the laws of the state in which the CONTRACTOR is working for the ENERGY RESOURCING, then such drug testing will be modified as necessary to comport with applicable state law. The ENERGY RESOURCING or its client may also require the ENERGY RESOURCING to undergo alcohol testing if the CONTRACTOR is injured while performing work for the ENERGY RESOURCING or if the ENERGY RESOURCING or its client have reasonable grounds to believe that the CONTRACTOR is using alcohol at work or is working for the ENERGY RESOURCING while in a condition impaired using alcohol.

10. ENERGY RESOURCING may terminate this Agreement for cause at any time by written notice to CONTRACTOR.  CONTRACTOR shall give ENERGY RESOURCING thirty (30) days' notice of termination.  This Agreement shall be considered terminated by ENERGY RESOURCING for cause if terminated for conduct involving the commission of a felony or any other act involving moral turpitude, unethical business or professional practices, or any act in violation of this Agreement.  In the event that CONTRACTOR tenders notice of termination, CONTRACTOR agrees to complete work in progress in an orderly and professional fashion prior to actual termination.  Upon termination, CONTRACTOR shall be paid by ENERGY RESOURCING for all services properly performed up to the date of termination.

11. The CONTRACTOR shall furnish such references and professional qualifications documentation as ENERGY RESOURCING or ENERGY RESOURCING's Client may request.  By execution of this Agreement, CONTRACTOR hereby authorizes ENERGY RESOURCING to contact and seek independent confirmation of the CONTRACTOR's education and work history.



BANGKOK | BEIJING | BRISBANE | CALGARY | HOUSTON | LONDON | PERTH | SINGAPORE | ULSAN          Energy Resourcing

12. Any section of this Agreement found to be void for any reason shall not operate to void the entire agreement between the parties and shall be considered severable from the remainder of this Agreement.

13. The waiver by ENERGY RESOURCING of breach of any provision of this agreement by CONTRACTOR shall not operate or be construed as a waiver of any subsequent breach by CONTRACTOR.  No waiver shall be valid unless in writing and signed by an authorized officer of ENERGY RESOURCING.

14. In no event shall ENERGY RESOURCING, Client or their affiliates be liable for any special, punitive or consequential damages.  CONTRACTOR'S remedies are limited as expressly set forth herein.

15. This Agreement shall be construed and interpreted in accordance with the laws of the state of Texas except for its conflict of law's provisions. In the event of any dispute related to or arising from this Agreement, its performance, the Parties shall attempt in good faith to resolve disputes arising from or related to the performance, procedures, or management of this Agreement by referring the dispute to a senior management representative from each party to meet at a mutually agreeable time and place to attempt in good faith to arrive at a resolution. In the event such representatives are unable to resolve the matter with 14 days of first meeting, then either party upon written notice may refer the dispute, controversy or claim arising out of or relating to this Agreement, including any question regarding its existence, validity or termination to arbitration under the American Arbitration Rules and the situs shall be Houston, Texas.  The decision of the arbitrator shall be final and binding on the parties, and the judgment upon the award rendered by the arbitrator shall be enforceable in any court of competent jurisdiction. Each party shall bear its own legal fees, costs, and expenses incurred in such arbitration.

16. Chemical Screening shall only be required and applicable if required by Client.

17. ENERGY RESOURCING shall at all time have access to the CONTRACTOR'S work product developed under this Agreement whenever in preparation, and CONTRACTOR shall facilitate such access and inspection thereof.  Inspection or lack of inspection by ENERGY RESOURCING shall not be deemed to be a waiver of any of its rights under CONTRACTOR'S guarantees or of its right to subsequently reject defective or deficient services.

18. ENERGY RESOURCING reserves the right to request from CONTRACTOR quarterly evidence of the filing of Employers Quarterly Federal Tax Return (Form 941), or other verifiable proof of proper tax payment.

**For: Energy Resourcing Americas, Inc.**                    **For: Dexter Harris**

_Julie A. Booth_
_____                    _____
Signature                                            Signature

_____03.26.2020_____                    _____
Date                                                 Date



BANGKOK | BEIJING | BRISBANE | CALGARY | HOUSTON | LONDON | PERTH | SINGAPORE | ULSAN

# INDEPENDENT CONTRACTOR FEE SCHEDULE

**CONTRACTOR NAME:**
Dexter Harris

This fee schedule for services performed on behalf of Energy Resourcing Americas, Inc. is as follows:

| CONTRACTOR | HOURLY RATE | EFFECTIVE DATE |
|---|---|---|
| Dexter Harris | $95.00 | To be determined |

**OVERTIME DEFINITION:**
Paid at time and half

**MISC EXPENSES:**
Please reference terms and conditions (following page).

**TERMS OF CONTRACT:**
For purposes of fee negotiations only, this contract is valid from SUBJECT TO OWNERS CONTINUED AUTHORIZATION.

Timesheets should be prepared on a weekly basis and directed to the attention of Rachel Leleux, Rachel.leleux@energyresourcing.com or Nancy Yang, Nancy.yang@energyresourcing.com

Questions concerning the Subcontractors Agreement and the Fee Schedule can be directed to Julie Booth, julie.booth@energyresourcing.com

| CONTRACTOR | DATE |
|---|---|
| | |
| ENERGY RESOURCING REPRESENTATIVE | DATE |
| *Julie A. Booth* | 03.26.2020 |

BANGKOK | BEIJING | BRISBANE | CALGARY | HOUSTON | LONDON | PERTH | SINGAPORE | ULSAN

Energy Resourcing

| 1 | Contractor Name | Dexter Harris |
|---|---|---|
| 2 | Position Title | Project Manager |
| 3 | Client | Worley |
| 4 | Reporting Manager | Marc Pelletier |
| 5 | Start Date | To be determined |
| 6 | Work Location | San Ramon Valley Conference Center, 3301 Crow Canyon Road, San Ramon, CA |
| 7 | Standard Work Week | Monday through Friday |
| 8 | Standard Time Remuneration | US $95.00/hour and all overtime paid at time a half US $142.50/hour |
| 9 | Mobilization/Demobilization Travel | Mileage and transit time, if beyond a 50-mile radius from employee residence to the job site, as well as any motor vehicle expenses, will be reimbursed based upon the GSA vehicle mileage rate in force at the time of travel. The maximum reimbursable mileage is 500 miles per round trip. Reimbursement of labor rates will be allowed for transit time beyond 50 miles starting at Contractor's principal place of business to the job site and return to Contractor's principal place of business. The maximum reimbursement amount for transit time paid may not exceed eight (8) hours.<br><br>If Contractor is required to rent a vehicle while performing PG&E authorized Services or Work, the vehicle (compact) must be rented at a daily cost not to exceed $40 exclusive of all taxes. Gasoline will be reimbursed at actual cost provided that Contractor gases up at a service station before returning the rental car rather than payment through the rental car service. Rental of specialty vehicles such as off-road vehicles that exceed the $40 per day cost limit require PG&E pre-approval. PG&E will not reimburse for any additional fees or costs, including but not limited to fines, penalties, parking tickets, young driver surcharges and damage to vehicle. |
| 10 | Travel | A round-trip coach class airline ticket will be provided to the Contractor's personnel's home residence every 4 weeks while on assignment for Worley in California. Contractors must make flight selections based on the lowest available airfare and may not make a selection based on personal preference, e.g. airline, type of aircraft, seating preference or frequent flyer program. Airline tickets will not be provided to Contractor's personnel for other destinations besides their home residence. |
| 11 | Temporary Living, Meals & Incidentals Per Diem | Lodging expenditures shall comply with United States General Services Administration ("GSA") per diem allowance for lodging based upon the zip code of where the lodging expenditure occurred. Contractor's daily expenditures for state and local taxes associated with the lodging expenditure are additional reimbursable expenses to the lodging per diem allowance.<br>Meals and incidental expenses shall be reimbursable as follows.<br>Contractor shall only submit per diems for meals not provided by PG&E<br>Continental Breakfast - $16.00<br>Lunch - $17.00<br>Dinner - $33.00<br>Total Daily Meal Per Diem - $66.00 |
| 12 | Pre-Employment Examinations | Background screening and Drug & Alcohol Testing |

**Candidate Signature:**

_____

**Energy Resourcing Approver Signature:**

*Julie A. Booth*
_____

EEOC Form 5 (11/09)

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974.  See enclosed Privacy Act Statement and other information before completing this form.

| Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|
| ☐ FEPA | |
| ☒ EEOC | **480-2021-00954** |

**CALIFORNIA DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**   and EEOC

*State or local Agency, if any*

| Name *(indicate Mr., Ms., Mrs.)* | Home Phone | Year of Birth |
|---|---|---|
| **MR. DEXTER D HARRIS** | **(484) 735-4356** | |

| Street Address | City, State and ZIP Code |
|---|---|
| **6325 BENTLEY DRIVE, BAKER,LA 70714** | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others.  *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. |
|---|---|---|
| **WORLEY** | **15 - 100** | **(626) 803-5407** |

| Street Address | City, State and ZIP Code |
|---|---|
| **181 W HUNTINGTON DR., STE 110, MONROVIA, CA 91016** | |

| Name | No. Employees, Members | Phone No. |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

DISCRIMINATION BASED ON *(Check appropriate box(es).)*

☒ RACE   ☐ COLOR   ☐ SEX   ☐ RELIGION   ☐ NATIONAL ORIGIN

☐ RETALIATION   ☐ AGE   ☐ DISABILITY   ☐ GENETIC INFORMATION

☐ OTHER *(Specify)*

DATE(S) DISCRIMINATION TOOK PLACE

Earliest **03-27-2020**    Latest **08-26-2020**

☐ CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

**On 3/26/20 I as an agent employee of St. Jude ...LLC enter into a 1099 contract with E.R.A.I. the 1099 department arm of Worley, with then Worley P.M. Mark Pelletier. Shortly afterwards I was informed via text message by Worley P.M. Mark Pelletier that he was being asked to leave the position due to a non-work performance reason. (A personal bias within his company working matrix with a Mr. Issam Al Ayadi the PG&E transmission line and lead inspection supervisor.) I was instructed to contact via call a Worley P.M. Mansour Pourcyrous as he would be assuming the role of project manager on Worley behalf or to contact a Mr. E.B. Jensen V.P. General manager of Infrastructure with Worley.**

**    On 3/27/20 via phone call I was contacted by Worley P.M. Mansour Pourcyrous. The nature of the call was a general in-service and introduction. My recollection of the phone meeting in hindsight was a major red flag and a sign of things yet to come, the meeting lack basic business**

| I want this charge filed with both the EEOC and the State or local Agency, if any.  I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| **Digitally signed by Dexter Harris on 02-09-2021 10:59 AM EST** | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |

EEOC Form 5 (11/09)

| C HARGE OF D ISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974.  See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA  ☒ EEOC | 480-2021-00954 |

| CALIFORNIA DEPARTMENT OF FAIR EMPLOYMENT & HOUSING | and EEOC |
|---|---|
| *State or local Agency, if any* | |

structure. Worley P.M. Mansour Pourcyrous did not state his full name or title with the company, only is first name with the immediately following statement ('Oh I see you really did good for yourself, you have a
nice contract a nice pay rate and overtime too, you really did a good job at negotiations.'). I did
not reply as being taken back by his statements, after a brief pause, he continued and informed
me that he was not yet in the know about the exact time period in which the P.O. (pay order) would be received, in general the reception of the P.O. signals the activations of payments.

   Worley P.M. Mansour Pourcyrous statement within this call about the P.O. was in direct contradiction to the information I had received on the prior day 3/26/20 from the former Worley P.M. Mark Pelletier. In his text to me he stated the P.O. had been received by Worley as of 3/26/20. No updates from 3/27/20 until 4/10/20 when I received via text message from P.M. Mansour Pourcyrous that Worley had not as of date received the P.O. from P.G.&E and had only as of 4/10/20 accepted all required documents and that I would receive an update on the expectation of the P.O. within the week. I note here it was Friday at 1:01 p.m. Worley P.M. Mansour Pourcyrous was delaying the start date. (For consideration I have included a sample in the form of a numbered summary of the process as it usually applies to a 1099 contract work employment start up.) a. negotiations 1 signing of contract
1. company notification of receipt of P.O. (pay order) signaling the start of the onboarding in-service processing the start of work and payment cycle for payment at first eligible payment cycle etc... My experience with E.R.A.I. -Worley a negotiation began 2/25/20
1a. signed a contact with E.R.A.I./Worley on 3/26/20 given notice of received P.O. and pending start date by Worley P.M. Mark Pelletier.
b. 3/27/20 informed no P.O. by Worley Project Manager Mansour Pourcyrous
2. 4/20/20 started to work. On boarding via self-contact with P.G.&E.
3. 1st payment cycle eligible 5/1/20

   Due to what I deemed an unusual long delay in receiving the start date I contacted Mr. Issam Al-Ayadi of P.G.& E. giving notice of my being in California as of 3/12/20 and the signing of a work contract as of 3/26/20 with their business partner Worley and my mounting financing hardship due to delay in starting work, hotel, daily needs, travel expense. He responded that I should go home to Louisiana, to which I replied that I had driven to California and the state of California had in place a state wide travel ban with fines up to 1000 dollars and pentiles up to 6 months in jail for violations. On 4 /14 /20 I received a message from Mr. Issam Al-Ayadi to remained in California and on the following Monday I was instructed via text message to come to P.G.& E. side door at 9:00 am to received work related materials to begin work. I note here I received direct instruction from P.G.& E management to remain in California on 4/14/20. In my contract there was a (perdeim) agreement being that I was an out of state employee and as of 4/20/20 to 8/26/20 this provision was not paid and remains unpaid unto to this day!

| I want this charge filed with both the EEOC and the State or local Agency, if any.  I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| **Digitally signed by Dexter Harris on 02-09-2021 10:59 AM EST** | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (*month, day, year*) |

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974.  See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | 480-2021-00954 |

| CALIFORNIA DEPARTMENT OF FAIR EMPLOYMENT & HOUSING | and EEOC |
|---|---|
| *State or local Agency, if any* | |

**I begin work on 4/20/20 there were others already working. I was contacted on 4/24/20 via text message by Worley P.M. Mansour Pourcyrous about contract info and a pending start date, I had not at that time received related tools i.e. lap top programs or the sort from Worley I was working on and thru the computer and programs of P.G.& E.**

**On 5/7/20 Worley Project Manager Mansour Pourcyrous acknowledges via email of my non receptions of the complete equipment package from Worley. While in contrast he had instructed me to do the onboarding process on 4/24/20. I received the laptop of Worley on 5/4/20 not the docking stations, I ending up buying the docking stations receiving them on 5/8/20 from Amazon, yet I never used the docking stations or equipment of Worley due to the**

| I want this charge filed with both the EEOC and the State or local Agency, if any.  I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| **Digitally signed by Dexter Harris on 02-09-2021 10:59 AM EST** | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (*month, day, year*) |

CP Enclosure with EEOC Form 5 (11/09)

**PRIVACY ACT STATEMENT:**  Under the Privacy Act of 1974, Pub. Law 93-579, authority to request personal data and its uses are:

**1.  FORM NUMBER/TITLE/DATE.**  EEOC Form 5, Charge of Discrimination (11/09).

**2.  AUTHORITY.**  42 U.S.C. 2000e-5(b), 29 U.S.C. 211, 29 U.S.C. 626, 42 U.S.C. 12117, 42 U.S.C. 2000ff-6.

**3.  PRINCIPAL PURPOSES.**  The purposes of a charge, taken on this form or otherwise reduced to writing (whether later recorded on this form or not) are, as applicable under the EEOC anti-discrimination statutes (EEOC statutes), to preserve private suit rights under the EEOC statutes, to invoke the EEOC's jurisdiction and, where dual-filing or referral arrangements exist, to begin state or local proceedings.

**4.  ROUTINE USES.**  This form is used to provide facts that may establish the existence of matters covered by the EEOC statutes (and as applicable, other federal, state or local laws).  Information given will be used by staff to guide its mediation and investigation efforts and, as applicable, to determine, conciliate and litigate claims of unlawful discrimination.  This form may be presented to or disclosed to other federal, state or local agencies as appropriate or necessary in carrying out EEOC's functions.  A copy of this charge will ordinarily be sent to the respondent organization against which the charge is made.

**5.  WHETHER DISCLOSURE IS MANDATORY; EFFECT OF NOT GIVING INFORMATION.**  Charges must be reduced to writing and should identify the charging and responding parties and the actions or policies complained of.  Without a written charge, EEOC will ordinarily not act on the complaint.  Charges under Title VII, the ADA or GINA must be sworn to or affirmed (either by using this form or by presenting a notarized statement or unsworn declaration under penalty of perjury); charges under the ADEA should ordinarily be signed.  Charges may be clarified or amplified later by amendment.  It is not mandatory that this form be used to make a charge.

### NOTICE OF RIGHT TO REQUEST SUBSTANTIAL WEIGHT REVIEW

Charges filed at a state or local Fair Employment Practices Agency (FEPA) that dual-files charges with EEOC will ordinarily be handled first by the FEPA.  Some charges filed at EEOC may also be first handled by a FEPA under worksharing agreements.  You will be told which agency will handle your charge.  When the FEPA is the first to handle the charge, it will notify you of its final resolution of the matter.  Then, if you wish EEOC to give Substantial Weight Review to the FEPA's final findings, you must ask us in writing to do so within 15 days of your receipt of its findings.  Otherwise, we will ordinarily adopt the FEPA's finding and close our file on the charge.

### NOTICE OF NON-RETALIATION REQUIREMENTS

Please **notify** EEOC or the state or local agency where you filed your charge **if retaliation is taken against you or others** who oppose discrimination or cooperate in any investigation or lawsuit concerning this charge.  Under Section 704(a) of Title VII, Section 4(d) of the ADEA, Section 503(a) of the ADA and Section 207(f) of GINA, it is unlawful for an *employer* to discriminate against present or former employees or job applicants, for an *employment agency* to discriminate against anyone, or for a *union* to discriminate against its members or membership applicants, because they have opposed any practice made unlawful by the statutes, or because they have made a charge, testified, assisted, or participated in any manner in an

investigation, proceeding, or hearing under the laws. The Equal Pay Act has similar provisions and Section 503(b) of the ADA prohibits coercion, intimidation, threats or interference with anyone for exercising or enjoying, or aiding or encouraging others in their exercise or enjoyment of, rights under the Act.

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | **555-2021-00559** |

| California Department Of Fair Employment & Housing | and EEOC |
|---|---|

*State or local Agency, if any*

| Name *(indicate Mr., Ms., Mrs.)* | Home Phone *(Incl. Area Code)* | Date of Birth |
|---|---|---|
| **Mr. Dexter D. Harris** | | |

| Street Address | City, State and ZIP Code |
|---|---|
| **6325 Bentley Drive, Baker, LA 70714** | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (*If more than two, list under PARTICULARS below.*)

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| **PACIFIC GAS AND ELECTRIC COMPANY** | **500 or More** | **(925) 951-3531** |

| Street Address | City, State and ZIP Code |
|---|---|
| **3301 Crow Canyon Road, San Ramon, CA 94583** | |

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

DISCRIMINATION BASED ON *(Check appropriate box(es).)*

☒ RACE ☐ COLOR ☐ SEX ☐ RELIGION ☐ NATIONAL ORIGIN
☐ RETALIATION ☐ AGE ☐ DISABILITY ☐ GENETIC INFORMATION
☐ OTHER *(Specify)*

DATE(S) DISCRIMINATION TOOK PLACE
Earliest **08-26-2020** Latest **08-26-2020**
☐ CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

**Please See Attached.**

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| 2-20-21 | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |
| *Date* *Charging Party Signature* | |

EEOC Update revision

A Microsoft teams mandatory meeting was held on 8/26/20 at 5 pm, I was notified of

the meeting and its time on the same 8/26/20 at 4:43 pm after I had ended the work day at

4:30 pm. I was notified via phone call by a Mr. Jamie Ortiz, the transmission line inspection

supervisor for P.G.& E. I was not given any info as to the nature of the meeting nor any

preparation time for the meeting. On the team chat along with myself was Issam A. the lead

transmission line supervisor for PG&E, Mrs. Rosa Serrano, supervisor for CIRT and the

aforementioned, Mr. Jamie Ortiz. The first person to speak was Mr. Issam his words were in referenced
to the inspection department and the inspection of a structure that I had worked on 5/11/20 . I was no
longer working in the inspection as of 7/7/20 my first day of CIRT training( 51 days removed ).  I was
immediately taken back as the date was 8/26/20, I asked what was the reason for this reference, it was
then Issam mentioned that I had failed to label a structure as a A tag and that this failure was
unacceptable thus a double standard. I being a African American a missed a tag structure was
unacceptable while Mr. Mike Padilla being a European American the missing of a A tag structure labeling
was acceptable. Simultaneously Issam instructed Mr. Jamie Ortiz to present a photo display of slides
pertaining to the structure and to point out the reasons as to the A tag label . Issam mentioned the time
that I had taken to survey the structure being over one hour then he asked my say on the matter. I
stated in regards to the time of survey these structures take time as there are thousands of pictures

per structure he agreed. I also stated that I had no recollection of seeing the photos that were

currently being shown to me by Mr. Jamie Ortiz and upon viewing those photos that I would

if I were inspecting that structure based on these pictures I would label it as an A tag. I also

stated to him that at the time if he remembered there were several glitches within the software

name Sherlock (the program which uploaded the photos for inspection) and that photo

content could be added within the inspection photo envelope at various times and to miss

such a obvious label is not my work, to which Mr. Issam replied what did I mean? To which I

replied if I would have viewed the photos being rendered currently, I would have applied an A tag

label to the inspection of this structure. I was not notified of the inspection until then and I was

not allowed to see the date time stamp nor was I given a chance to question the person who

graded my work or find out why the S.M.E did not bring this to my attention at that time period.

Mr. Issam also stated that he had to file paperwork with the state of California due to the

failure in proper labeling of this A tag structure. I was never shown this report or was ever aware

of this procedural process, in my previous 1 year plus work experience as a inspector or in the

case of the failure to correctly label an A tag structure in regards to the 7/ 7/20 incident that

involved (subject matter expert) S.M..E Mike Padilla. During my one year period prior I was a aware

of inspectors miss labeling and had never heard of this before I believe he made this up.

The review process of the inspection department as I mentioned previously function on a

direct and unchain method which as stood was a 2 to 3 day direct response time to worked

inspections by the direct S.M.E. and a 3 to 5 day response by the upchain S.M.E. The work

Mr .Issam was question me about was performed on 5/11/20 with the date being 8/26 /20 . A

full 3months and 15 days or 107 days prior added to the fact that I had not worked inspections

since 7/7/20, (fifty -one days pior ). At the time of the inspection in question my direct S.M.E.

was a Mr. Jeff Elderly and the upchain S.M.E. a Mr. Justin Clark. Mr Justin Clark is the same

S.M..E. that was involved in the 7/1/20 incident in which the S.M.E. Mr. Mike Padilla unlabeled

my correctly identified A tag structure. Mr.Jeff Elderly and I had a history of conflicts in the

work place due to his atitude and my following the Job Aid as the inspections were subject

to review and cancellation. On two occasions just to give light of our work history conflict

stemming from his attitude. I recall having a inspection failed and resended by him due to a

crack insulator on a structure. I did not write up a crack porcelain insulators due to the fact that the Job

Aid instructions were not to unless the crack was more than 2 inches which it was not, and when I

refuted the cancellation after much debate he replied " well the Job Aid will change at the end of

the month" so just do with I say! to which I replied was I supposed to know that and how can I

be penalized for that. On another occasion involving the protocol dealing with the inspections

of the grounding mechanisms of structures, he had a major issue with me following the I.E.E.E.

standards which quota required at least one ground per structure and depending on the size or

load two grounding mechanisms. Mr. Jeff Elderly strongly stated to me that P.G.& E was only

concerned with having one grounding mechanism per every fourth or fifth structure and that my

inspections will reflect that quota or be failed and resended counting against my daily inspection

total! and that I was to smart for my own good. These being only two of the many instances!

I take issue with the questioning done after such a long period of time and the other

statements of Mr. Issam of PG&E as I saw it was being done in a way as to build a case

against me to fulfill the desire of the S.M.E to have me terminated. I view his statements as

incriminating in nature of fact to the hostile racially charge work environment his self as to not

have brought this to my attention until after 3 months and 15 days with 51 days of that time

seeing me not even working in that department, how is it even possible to have a immediately

possible danger missed for so long. Mr. Issam mentioned no failure on the S.M..E.'s part nor

any indication of his liability as he was the Lead Transmission Line Inspector Supervisor, he did say my

failure was unacceptable! I was the only colored person involved in this ordeal and all the

blame for this incident was placed on me.

At this point Mrs. Rosa Serrano Supervisor CIRT Team began to speak her statement was

very patronizing "it was a difficult decision to make because everybody likes me but upon review

I was the AIR Team Plus/CIRT team member with the most mistakes upon review " as if I was being
employed not because of my ability to work but because I was liked another racial stereotype. I asked

her when was a review done? She replied " you are the newest member ". She did not state the

number of errors or give context as to my errors. I then stated that i had done directly as I was

trained by Casey Davis and  95 percent of my work had been done in group under direct supervision

as I was considered to still be in the learning proficiency progression curve with the remaining

5 percent dealing with low priority labeled tags. I asked who gave the review as my direct

supervisor Mr. Quinton Beams had stated just prior in that day to me that I was months ahead of

the norm which was in direct contradiction to what she was now saying that my work was error

filled. Mrs. Rosa Serrano did not reply at all to any of my questions her attitude really showed through

from her statements to her no reply as if I didn't deserve answer. Mr. Issam started to speak

again saying this meeting was just informing me to speak to the Worley Project Manager Mr.

Mansour Pourcyrous for the final outcome of these findings. The role of Justin Clark was the
presentation of the inspection slideshow. There was no mention of termination.

To digress prior to this mandatory teams meeting early that morning on 8 /26/20 I recieved

a email at 6:06 am from Sr. Project Control Manager of Worley Mrs Kathy Hanley asking me

about my weekly hours work, it stated 50 hours? worked. I also received a email from Project

Manager Mr. Mansour Pourcyrous at 8 :08 am about how many hours overtime did I work this week 5

hrs, like last week I have documented that he recieved a attachment via mail from work floor

mailer that I had work 59 hours that week and here he was asking me as if he didn't already

know the total of my hours work. I recieved another email from P.M. Mansour Pourcyrous at 8 :20 am

asking did I have approval to work over 50 hrs. He had shown from the beginning his contempt

for me and my salary wages his actions and words point to the fact that he held a belief that

I was earning to much money as a black man. I replied Mrs. Kathy Handley at 10:41 am, 59

hrs worked this week. At 12 :33 pm I replied to P.M. Mansour Pourcyrous by email with the following

statement please contact CIRT Team Air Team plus management for verification of overtime work I

have included their phone numbers and email addresses. At 1:36 pm I recieved a direct phone

to phone call from Worley P.M. Mansour Pourcyrous, in which angrily and hastily stated he was
unaware that I was working 9 extra hours this week and did I have approval to work 9 extra hours. This
was another lie another false statement and I reminded him that I had notified him that Air Team Plus
and CIRT would be going to a 60 hrs work week due to a log jam of back work. He again reinstated that
he had no idea that my work week would exceed 50 hours and asked again did I have clearance to work

the overtime this was after I had already notified him and answered his email he was very clear

that he had a problem with me working overtime I was given the permission to work overtime

by CIRT Supervisor Mrs. Rosa Serrano, she assigned me to 5 hrs of overtime the first week that

I worked. There was a list place for those who would be interested in overtime I placed my

name on the list and later there was a list published for overtime by name and hours allowed,

my name was last on the list in red color with 5 hrs allowed everyone else was in black with 10

hrs allowed I never recieved and explanation for the time allotment or the color difference. On

the following overtime list I was given 10 hrs total eligibility of which I only work 9 hrs due to

the time difference of myself and group members being in different time zones that I was assigned to

work with. I was assigned to work with the A tag sorting Group this was the optimal group, I

mentioned this for precedence and to illuminate the contradiction of her statement that my work

was error filled, I was assigned to the group with the aforementioned highest priority.

After the 8/26/20 mandatory meeting I did call Worley PM Mansour Pourcyrous reaching him leaving
two voice messages he return my call and upon me informing him as to the nature of my concern and
the instructions I received to call him he replied that he had no idea what was going on and that

he would have to call PG&E and return my call. This was another lie another false statement

because it was him which arrange the meeting. when he did call he did informing me that

as of 8/26/20 as of 6:30 pm my services were no longer needed . I was given no reason for

termination only that I was terminated. A few days later I sent a letter seeking official letter

of termination. After no reply I sent another more detailed letter seeking comment and

explanation. I recieved a reply In letter form asking me to cease and desist all attempts to

contact P.G.&E. and Worley as this was a matter solely in the domain of E.R.A.I and to turn in all

equipment related to this contract laptops etc. which I did.

Having not received any offical disclosure of termination reason, having recieved a

number contradictory statements from P.M. Mansour Pourcyrous of Worley , a number of questions
and comments over my overtime work payment and allotment from the same P.M. Mansour Pourcyrous
and other top level mangement agents with in theses companies, having face work placed hostility

due to a racist working environment from my supervisors, having received unfair treatment in

time given to prepare for and in time taken to review a supposed failure in job performance as

a inspector, not being allowed to continue working as a inspector after the double failure of the

S.M.E. Mr. Mike Padilla was confirmed in the relabeling of an A tag structures on 7/ 1/ 20 ,

being silenced with movement to a different department were in subsequently I bore the burden

of having to learn and perform work in a different classification than which I was under contract

to perform, along with never receiving a performance review until the date of termination, I have
arrived at the conclusion that I have indeed experienced and endure work place hostility and racism. I
have experienced and endure discrimination in various ways and I was wrongfully terminated . These

are the reasons I Mr. Dexter D. Harris am filing EEOC complaint today.

CP Enclosure with EEOC Form 5 (11/09)

**PRIVACY ACT STATEMENT:**  Under the Privacy Act of 1974, Pub. Law 93-579, authority to request personal data and its uses are:

**1.**   **FORM NUMBER/TITLE/DATE.**  EEOC Form 5, Charge of Discrimination (11/09).

**2.**   **AUTHORITY.**  42 U.S.C. 2000e-5(b), 29 U.S.C. 211, 29 U.S.C. 626, 42 U.S.C. 12117, 42 U.S.C. 2000ff-6.

**3.**   **PRINCIPAL PURPOSES.**  The purposes of a charge, taken on this form or otherwise reduced to writing (whether later recorded on this form or not) are, as applicable under the EEOC anti-discrimination statutes (EEOC statutes), to preserve private suit rights under the EEOC statutes, to invoke the EEOC's jurisdiction and, where dual-filing or referral arrangements exist, to begin state or local proceedings.

**4.**   **ROUTINE USES.**  This form is used to provide facts that may establish the existence of matters covered by the EEOC statutes (and as applicable, other federal, state or local laws).  Information given will be used by staff to guide its mediation and investigation efforts and, as applicable, to determine, conciliate and litigate claims of unlawful discrimination.  This form may be presented to or disclosed to other federal, state or local agencies as appropriate or necessary in carrying out EEOC's functions.  A copy of this charge will ordinarily be sent to the respondent organization against which the charge is made.

**5.**   **WHETHER DISCLOSURE IS MANDATORY; EFFECT OF NOT GIVING INFORMATION.**  Charges must be reduced to writing and should identify the charging and responding parties and the actions or policies complained of.  Without a written charge, EEOC will ordinarily not act on the complaint.  Charges under Title VII, the ADA or GINA must be sworn to or affirmed (either by using this form or by presenting a notarized statement or unsworn declaration under penalty of perjury); charges under the ADEA should ordinarily be signed.  Charges may be clarified or amplified later by amendment.  It is not mandatory that this form be used to make a charge.

### NOTICE OF RIGHT TO REQUEST SUBSTANTIAL WEIGHT REVIEW

Charges filed at a state or local Fair Employment Practices Agency (FEPA) that dual-files charges with EEOC will ordinarily be handled first by the FEPA.  Some charges filed at EEOC may also be first handled by a FEPA under worksharing agreements.  You will be told which agency will handle your charge.  When the FEPA is the first to handle the charge, it will notify you of its final resolution of the matter.  Then, if you wish EEOC to give Substantial Weight Review to the FEPA's final findings, you must ask us in writing to do so within 15 days of your receipt of its findings.  Otherwise, we will ordinarily adopt the FEPA's finding and close our file on the charge.

### NOTICE OF NON-RETALIATION REQUIREMENTS

Please **notify** EEOC or the state or local agency where you filed your charge **if retaliation is taken against you or others** who oppose discrimination or cooperate in any investigation or lawsuit concerning this charge.  Under Section 704(a) of Title VII, Section 4(d) of the ADEA, Section 503(a) of the ADA and Section 207(f) of GINA, it is unlawful for an *employer* to discriminate against present or former employees or job applicants, for an *employment agency* to discriminate against anyone, or for a *union* to discriminate against its members or membership applicants, because they have opposed any practice made unlawful by the statutes, or because they have made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the laws. The Equal Pay Act has similar provisions and Section 503(b) of the ADA prohibits coercion, intimidation, threats or interference with anyone for exercising or enjoying, or aiding or encouraging others in their exercise or enjoyment of, rights under the Act.

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974.  See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | 555-2021-00561 |

**California Department Of Fair Employment & Housing** _____ and EEOC

*State or local Agency, if any*

| Name *(indicate Mr., Ms., Mrs.)* | Home Phone *(Incl. Area Code)* | Date of Birth |
|---|---|---|
| **Mr. Dexter D. Harris** | | |

| Street Address | City, State and ZIP Code |
|---|---|
| **6325 Bentley Drive, Baker, LA 70714** | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others.  (*If more than two, list under PARTICULARS below.*)

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| **ENERGY RESOURCING GROUP** | **15 - 100** | **(281) 674-6647** |

| Street Address | City, State and ZIP Code |
|---|---|
| **575 N DAIRY ASHFORD RD STE 436, Houston, TX 77079** | |

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

DISCRIMINATION BASED ON *(Check appropriate box(es).)*

☒ RACE ☐ COLOR ☐ SEX ☐ RELIGION ☐ NATIONAL ORIGIN

☐ RETALIATION ☐ AGE ☐ DISABILITY ☐ GENETIC INFORMATION

☐ OTHER *(Specify)*

DATE(S) DISCRIMINATION TOOK PLACE
Earliest **08-26-2020**   Latest **08-26-2020**

☐ CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

**Please See Attached.**

I want this charge filed with both the EEOC and the State or local Agency, if any.  I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

I declare under penalty of perjury that the above is true and correct.

*Date* 2-20-21

*Charging Party Signature*

NOTARY – *When necessary for State and Local Agency Requirements*

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.
SIGNATURE OF COMPLAINANT

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)*

EEOC Update revision

A Microsoft teams mandatory meeting was held on 8/26/20 at 5 pm, I was notified of

the meeting and its time on the same 8/26/20 at 4:43 pm after I had ended the work day at

4:30 pm. I was notified via phone call by a Mr. Jamie Ortiz, the transmission line inspection

supervisor for P.G.& E. I was not given any info as to the nature of the meeting nor any

preparation time for the meeting. On the team chat along with myself was Issam A. the lead

transmission line supervisor for PG&E, Mrs. Rosa Serrano, supervisor for CIRT and the

aforementioned, Mr. Jamie Ortiz. The first person to speak was Mr. Issam his words were in referenced
to the inspection department and the inspection of a structure that I had worked on 5/11/20 . I was no
longer working in the inspection as of 7/7/20 my first day of CIRT training( 51 days removed ).  I was
immediately taken back as the date was 8/26/20, I asked what was the reason for this reference, it was
then Issam mentioned that I had failed to label a structure as a A tag and that this failure was
unacceptable thus a double standard. I being a African American a missed a tag structure was
unacceptable while Mr. Mike Padilla being a European American the missing of a A tag structure labeling
was acceptable. Simultaneously Issam instructed Mr. Jamie Ortiz to present a photo display of slides
pertaining to the structure and to point out the reasons as to the A tag label . Issam mentioned the time
that I had taken to survey the structure being over one hour then he asked my say on the matter. I
stated in regards to the time of survey these structures take time as there are thousands of pictures

per structure he agreed. I also stated that I had no recollection of seeing the photos that were

currently being shown to me by Mr. Jamie Ortiz and upon viewing those photos that I would

if I were inspecting that structure based on these pictures I would label it as an A tag. I also

stated to him that at the time if he remembered there were several glitches within the software

name Sherlock (the program which uploaded the photos for inspection) and that photo

content could be added within the inspection photo envelope at various times and to miss

such a obvious label is not my work, to which Mr. Issam replied what did I mean? To which I

replied if I would have viewed the photos being rendered currently, I would have applied an A tag

label to the inspection of this structure. I was not notified of the inspection until then and I was

not allowed to see the date time stamp nor was I given a chance to question the person who

graded my work or find out why the S.M.E did not bring this to my attention at that time period.

Mr. Issam also stated that he had to file paperwork with the state of California due to the

failure in proper labeling of this A tag structure. I was never shown this report or was ever aware

of this procedural process, in my previous 1 year plus work experience as a inspector or in the

case of the failure to correctly label an A tag structure in regards to the 7/ 7/20 incident that

involved (subject matter expert) S.M..E Mike Padilla. During my one year period prior I was a aware

of inspectors miss labeling and had never heard of this before I believe he made this up.

The review process of the inspection department as I mentioned previously function on a

direct and unchain method which as stood was a 2 to 3 day direct response time to worked

inspections by the direct S.M.E. and a 3 to 5 day response by the upchain S.M.E. The work

Mr .Issam was question me about was performed on 5/11/20 with the date being 8/26 /20 . A

full 3months and 15 days or 107 days prior added to the fact that I had not worked inspections

since 7/7/20, (fifty -one days pior ). At the time of the inspection in question my direct S.M.E.

was a Mr. Jeff Elderly and the upchain S.M.E. a Mr. Justin Clark. Mr Justin Clark is the same

S.M..E. that was involved in the 7/1/20 incident in which the S.M.E. Mr. Mike Padilla unlabeled

my correctly identified A tag structure. Mr.Jeff Elderly and I had a history of conflicts in the

work place due to his atitude and my following the Job Aid as the inspections were subject

to review and cancellation. On two occasions just to give light of our work history conflict

stemming from his attitude. I recall having a inspection failed and resended by him due to a

crack insulator on a structure. I did not write up a crack porcelain insulators due to the fact that the Job

Aid instructions were not to unless the crack was more than 2 inches which it was not, and when I

refuted the cancellation after much debate he replied " well the Job Aid will change at the end of

the month" so just do with I say! to which I replied was I supposed to know that and how can I

be penalized for that. On another occasion involving the protocol dealing with the inspections

of the grounding mechanisms of structures, he had a major issue with me following the I.E.E.E.

standards which quota required at least one ground per structure and depending on the size or

load two grounding mechanisms. Mr. Jeff Elderly strongly stated to me that P.G.& E was only

concerned with having one grounding mechanism per every fourth or fifth structure and that my

inspections will reflect that quota or be failed and resended counting against my daily inspection

total! and that I was to smart for my own good. These being only two of the many instances!

I take issue with the questioning done after such a long period of time and the other

statements of Mr. Issam of PG&E as I saw it was being done in a way as to build a case

against me to fulfill the desire of the S.M.E to have me terminated. I view his statements as

incriminating in nature of fact to the hostile racially charge work environment his self as to not

have brought this to my attention until after 3 months and 15 days with 51 days of that time

seeing me not even working in that department, how is it even possible to have a immediately

possible danger missed for so long. Mr. Issam mentioned no failure on the S.M..E.'s part nor

any indication of his liability as he was the Lead Transmission Line Inspector Supervisor, he did say my

failure was unacceptable! I was the only colored person involved in this ordeal and all the

blame for this incident was placed on me.

At this point Mrs. Rosa Serrano Supervisor CIRT Team began to speak her statement was

very patronizing "it was a difficult decision to make because everybody likes me but upon review

I was the AIR Team Plus/CIRT team member with the most mistakes upon review " as if I was being
employed not because of my ability to work but because I was liked another racial stereotype. I asked

her when was a review done? She replied " you are the newest member ". She did not state the

number of errors or give context as to my errors. I then stated that i had done directly as I was

trained by Casey Davis and  95 percent of my work had been done in group under direct supervision

as I was considered to still be in the learning proficiency progression curve with the remaining

5 percent dealing with low priority labeled tags. I asked who gave the review as my direct

supervisor Mr. Quinton Beams had stated just prior in that day to me that I was months ahead of

the norm which was in direct contradiction to what she was now saying that my work was error

filled. Mrs. Rosa Serrano did not reply at all to any of my questions her attitude really showed through

from her statements to her no reply as if I didn't deserve answer. Mr. Issam started to speak

again saying this meeting was just informing me to speak to the Worley Project Manager Mr.

Mansour Pourcyrous for the final outcome of these findings. The role of Justin Clark was the
presentation of the inspection slideshow. There was no mention of termination.

To digress prior to this mandatory teams meeting early that morning on 8 /26/20 I recieved

a email at 6:06 am from Sr. Project Control Manager of Worley Mrs Kathy Hanley asking me

about my weekly hours work, it stated 50 hours? worked. I also received a email from Project

Manager Mr. Mansour Pourcyrous at 8 :08 am about how many hours overtime did I work this week 5

hrs, like last week I have documented that he recieved a attachment via mail from work floor

mailer that I had work 59 hours that week and here he was asking me as if he didn't already

know the total of my hours work. I recieved another email from P.M. Mansour Pourcyrous at 8 :20 am

asking did I have approval to work over 50 hrs. He had shown from the beginning his contempt

for me and my salary wages his actions and words point to the fact that he held a belief that

I was earning to much money as a black man. I replied Mrs. Kathy Handley at 10:41 am, 59

hrs worked this week. At 12 :33 pm I replied to P.M. Mansour Pourcyrous by email with the following

statement please contact CIRT Team Air Team plus management for verification of overtime work I

have included their phone numbers and email addresses. At 1:36 pm I recieved a direct phone

to phone call from Worley P.M. Mansour Pourcyrous, in which angrily and hastily stated he was
unaware that I was working 9 extra hours this week and did I have approval to work 9 extra hours. This
was another lie another false statement and I reminded him that I had notified him that Air Team Plus
and CIRT would be going to a 60 hrs work week due to a log jam of back work. He again reinstated that
he had no idea that my work week would exceed 50 hours and asked again did I have clearance to work

the overtime this was after I had already notified him and answered his email he was very clear

that he had a problem with me working overtime I was given the permission to work overtime

by CIRT Supervisor Mrs. Rosa Serrano, she assigned me to 5 hrs of overtime the first week that

I worked. There was a list place for those who would be interested in overtime I placed my

name on the list and later there was a list published for overtime by name and hours allowed,

my name was last on the list in red color with 5 hrs allowed everyone else was in black with 10

hrs allowed I never recieved and explanation for the time allotment or the color difference. On

the following overtime list I was given 10 hrs total eligibility of which I only work 9 hrs due to

the time difference of myself and group members being in different time zones that I was assigned to

work with. I was assigned to work with the A tag sorting Group this was the optimal group, I

mentioned this for precedence and to illuminate the contradiction of her statement that my work

was error filled, I was assigned to the group with the aforementioned highest priority.

After the 8/26/20 mandatory meeting I did call Worley PM Mansour Pourcyrous reaching him leaving
two voice messages he return my call and upon me informing him as to the nature of my concern and
the instructions I received to call him he replied that he had no idea what was going on and that

he would have to call PG&E and return my call. This was another lie another false statement

because it was him which arrange the meeting. when he did call he did informing me that

as of 8/26/20 as of 6:30 pm my services were no longer needed . I was given no reason for

termination only that I was terminated. A few days later I sent a letter seeking official letter

of termination. After no reply I sent another more detailed letter seeking comment and

explanation. I recieved a reply In letter form asking me to cease and desist all attempts to

contact P.G.&E. and Worley as this was a matter solely in the domain of E.R.A.I and to turn in all

equipment related to this contract laptops etc. which I did.

Having not received any offical disclosure of termination reason, having recieved a

number contradictory statements from P.M. Mansour Pourcyrous of Worley , a number of questions
and comments over my overtime work payment and allotment from the same P.M. Mansour Pourcyrous
and other top level mangement agents with in theses companies, having face work placed hostility

due to a racist working environment from my supervisors, having received unfair treatment in

time given to prepare for and in time taken to review a supposed failure in job performance as

a inspector, not being allowed to continue working as a inspector after the double failure of the

S.M.E. Mr. Mike Padilla was confirmed in the relabeling of an A tag structures on 7/ 1/ 20 ,

being silenced with movement to a different department were in subsequently I bore the burden

of having to learn and perform work in a different classification than which I was under contract

to perform, along with never receiving a performance review until the date of termination, I have
arrived at the conclusion that I have indeed experienced and endure work place hostility and racism. I
have experienced and endure discrimination in various ways and I was wrongfully terminated . These

are the reasons I Mr. Dexter D. Harris am filing EEOC complaint today.

CP Enclosure with EEOC Form 5 (11/09)

**PRIVACY ACT STATEMENT:**  Under the Privacy Act of 1974, Pub. Law 93-579, authority to request personal data and its uses are:

**1.**  **FORM NUMBER/TITLE/DATE.**  EEOC Form 5, Charge of Discrimination (11/09).

**2.**  **AUTHORITY.**  42 U.S.C. 2000e-5(b), 29 U.S.C. 211, 29 U.S.C. 626, 42 U.S.C. 12117, 42 U.S.C. 2000ff-6.

**3.**  **PRINCIPAL PURPOSES.**  The purposes of a charge, taken on this form or otherwise reduced to writing (whether later recorded on this form or not) are, as applicable under the EEOC anti-discrimination statutes (EEOC statutes), to preserve private suit rights under the EEOC statutes, to invoke the EEOC's jurisdiction and, where dual-filing or referral arrangements exist, to begin state or local proceedings.

**4.**  **ROUTINE USES.**  This form is used to provide facts that may establish the existence of matters covered by the EEOC statutes (and as applicable, other federal, state or local laws).  Information given will be used by staff to guide its mediation and investigation efforts and, as applicable, to determine, conciliate and litigate claims of unlawful discrimination.  This form may be presented to or disclosed to other federal, state or local agencies as appropriate or necessary in carrying out EEOC's functions.  A copy of this charge will ordinarily be sent to the respondent organization against which the charge is made.

**5.**  **WHETHER DISCLOSURE IS MANDATORY; EFFECT OF NOT GIVING INFORMATION.**  Charges must be reduced to writing and should identify the charging and responding parties and the actions or policies complained of.  Without a written charge, EEOC will ordinarily not act on the complaint.  Charges under Title VII, the ADA or GINA must be sworn to or affirmed (either by using this form or by presenting a notarized statement or unsworn declaration under penalty of perjury); charges under the ADEA should ordinarily be signed.  Charges may be clarified or amplified later by amendment.  It is not mandatory that this form be used to make a charge.

### NOTICE OF RIGHT TO REQUEST SUBSTANTIAL WEIGHT REVIEW

Charges filed at a state or local Fair Employment Practices Agency (FEPA) that dual-files charges with EEOC will ordinarily be handled first by the FEPA.  Some charges filed at EEOC may also be first handled by a FEPA under worksharing agreements.  You will be told which agency will handle your charge.  When the FEPA is the first to handle the charge, it will notify you of its final resolution of the matter.  Then, if you wish EEOC to give Substantial Weight Review to the FEPA's final findings, you must ask us in writing to do so within 15 days of your receipt of its findings.  Otherwise, we will ordinarily adopt the FEPA's finding and close our file on the charge.

### NOTICE OF NON-RETALIATION REQUIREMENTS

Please **notify** EEOC or the state or local agency where you filed your charge **if retaliation is taken against you or others** who oppose discrimination or cooperate in any investigation or lawsuit concerning this charge.  Under Section 704(a) of Title VII, Section 4(d) of the ADEA, Section 503(a) of the ADA and Section 207(f) of GINA, it is unlawful for an *employer* to discriminate against present or former employees or job applicants, for an *employment agency* to discriminate against anyone, or for a *union* to discriminate against its members or membership applicants, because they have opposed any practice made unlawful by the statutes, or because they have made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the laws. The Equal Pay Act has similar provisions and Section 503(b) of the ADA prohibits coercion, intimidation, threats or interference with anyone for exercising or enjoying, or aiding or encouraging others in their exercise or enjoyment of, rights under the Act.